815 F.2d 78
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Phillip Elliott JONES, Plaintiff-Appellant,
v.
Dale E. FOLTZ, Kyle Seltin, and Ronald L. Wright,
Defendants-Appellees.
 No. 85-1301.
 United States Court of Appeals, Sixth Circuit.
 Feb. 10, 1987.
 
 Before KEITH and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.
 DAVID A. NELSON, Circuit Judge.
 
 
 1
 The plaintiff in this 42 U.S.C. Sec. 1983 action appeals from a summary judgment in favor of the defendants. A prisoner at the Michigan State Prison at Jackson, the plaintiff alleged in his pro se complaint that the warden and two prison officials pushed him into a locker in his cell and ignored his requests for medical attention. He also claimed there was a violation of his due process rights when he was found guilty of misconduct charges brought under a policy directive not properly promulgated under the Michigan Administrative Procedure Act. We shall reverse the district court's judgment dismissing the case, having concluded that there is a genuine issue as to certain material facts and that final disposition of the claim arising from the disciplinary proceedings should be stayed to give the plaintiff an opportunity to seek administrative relief.
 
 
 2
 The complaint alleged that on May 25, 1983, when the plaintiff was returned to his cell after a shower, he noticed that his cell had been "ransacked." He asked officers Wright and Seltin to let him check for missing property. Before he could completely turn around to face his cell, the officers allegedly pushed him into his locker, injuring his left leg and his testicles. The plaintiff asserted that when he then asked Officer Seltin for medical attention his request was ignored. The complaint also alleged that the plaintiff was improperly placed in segregation as a result of the incident, with a loss of good time credits. Based on these allegations, the plaintiff claimed that his rights under the Eighth and Fourteenth Amendments had been violated.
 
 
 3
 The defendants moved to dismiss or, in the alternative, for summary judgment. By affidavit, Officers Wright and Seltin asserted that when they took the plaintiff back to his cell on the day in question, they permitted him to stand in the doorway of the cell and look at it for several minutes before again ordering him to enter his cell. They alleged that when he refused to enter his cell and turned towards them, they pushed him into his cell only far enough to close the door. They denied that the plaintiff struck any part of his body on the cell furnishings or that the plaintiff requested medical assistance.
 
 
 4
 With regard to the plaintiff's claim that he was improperly disciplined, the defendants argued that the plaintiff's allegations lacked sufficient specificity. Finally, the defendants argued that the claim against Warden Dale Foltz must fail because the plaintiff's complaint failed to show any direct or personal involvement by the Warden.
 
 
 5
 In response, the plaintiff filed documents essentially denying the allegations of Officers Wright and Seltin and asserting that the plaintiff was ordered to be released from segregation in April but was held there until late in May.
 
 
 6
 The district court issued an opinion and order purporting to dismiss the plaintiff's complaint under Rule 12(b)(6), Fed.R.Civ.P. Because the court considered the affidavits of Officers Wright and Seltin, however, we shall review the decision as if the court had granted the alternative motion for summary judgment.
 
 The district court concluded as follows:
 
 7
 "Even assuming that defendant officers shoved plaintiff with such force that his testicles and right leg hit his locker, plaintiff has not demonstrated that defendants' action was wanton or that their response, under the circumstances, was unnecessary. Therefore, plaintiff's first count must be dismissed.
 
 
 8
 Plaintiff has not established that defendants showed a 'deliberate indifference' to his medical needs.... In fact, defendants deny having knowledge that plaintiff had requested medical assistance. While plaintiff's condition at the time he requested aid and not his subsequent condition should determine whether defendants wrongfully denied him medical attention, plaintiff points to no dire results stemming from the lack of medical treatment. Furthermore, his only complaints at the time he allegedly requested assistance were pain from his testicles and bruises on other parts of his body."
 
 
 9
 The court dismissed counts one and two, which dealt with use of excessive force and denial of medical attention, and denied the motion to dismiss count three, regarding improper discipline, treating it as a motion for a more definite statement and ordering the plaintiff to file a more definite statement within thirty days. The court declined to determine whether Warden Foltz was a proper defendant, because the other rulings made such a determination unnecessary.
 
 
 10
 In his response to the order for a more definite statement, the plaintiff said that the misconduct finding was based on a prison rule not properly promulgated under the Michigan Administrative Procedure Act. He claimed that because his misconduct report was based on an improperly promulgated policy directive, he was denied due process. He also reasserted the claim that he was held in confinement beyond the date on which he was to be released.
 
 
 11
 The district court then dismissed the entire case. The court agreed with the defendants that the authority for the misconduct finding was Mich.Comp.Laws 791.5501, not the policy directive. It further stated that even if the plaintiff could show that the defendants had relied on the policy directive in charging him with misconduct, such reliance would be immaterial as far as a violation of the Due Process Clause was concerned.
 
 I. Unnecessary Force Used Against Plaintiff
 
 12
 Several courts have found the excessive use of force by law enforcement and prison officials to be in violation of the Constitution and actionable under 42 U.S.C. Sec. 1983. In Slakan v. Porter, 737 F.2d 368, 371 (4th Cir.1984), cert. denied, 470 U.S. 1035 (1985), for example, the Court of Appeals for the Fourth Circuit held the Eighth Amendment had been violated where a prisoner who reached through the bars of his cell door and "slapped" a prison official had coffee thrown in his face, was subdued with high-pressure hoses and tear gas, and was beaten repeatedly with billy clubs until he lost consciousness. The court said "[t]he unjustified striking or beating of a prisoner by police or correctional officials constitutes cruel and unusual punishment which is actionable under 42 U.S.C. Sec. 1983." Id. at 372.
 
 
 13
 The Court of Appeals for the Third Circuit also applied the Eighth Amendment in Howell v. Cataldi, 464 F.2d 272, 280-281 (3d Cir.1972), in which an apparently intoxicated arrestee (later determined to have been suffering from a diabetic coma) was beaten with a blackjack and a wooden club while handcuffed. The court held that "the physical force inflicted upon him under the circumstances amounted to a prima facie case of cruel and unusual punishment." Id. at 281.
 
 
 14
 This court applied the Due Process Clause rather than the Eighth Amendment in Marchese v. Lucas, 758 F.2d 181, 182-83 (6th Cir.), petition for cert. filed, 54 U.S.L.W. 3153 (1985), where a prisoner was twice beaten while in the custody of sheriff's officers, once by several officers after he attempted to flee and was recaptured, and once by an unknown person permitted to enter his cell. This court stated,
 
 
 15
 "The facts in this case are close kin to those cases notorious in American law where, because helpless victims have been abused under color of legal authority, the Supreme Court has granted relief in one form or another....
 
 
 16
 Several of these cases involve such outrageous abuse of defenseless citizens as to 'shock the conscience of the court.' Applying that description to the facts of this case is, we believe, appropriate ..."
 
 
 17
 Id. at 185 (citations omitted).
 
 
 18
 In Franklin v. Aycock, 795 F.2d 1253 (6th Cir.1986), similarly, we said:
 
 
 19
 "We further conclude that the district court correctly held that the beating violated [the plaintiff's] constitutional rights and was actionable under Sec. 1983.... The beating clearly violated [the plaintiff's] substantive due process rights. Perhaps the premier decision addressing when conduct by a prison official violates an inmate's constitutional rights is Johnson v. Glick, 481 F.2d 1028 (2d Cir.) (Friendly, J.), cert. denied sub nom. John v. Johnson, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). See Norris v. District of Columbia, 737 F.2d 1148, 1150 (D.C.Cir.1984). In Johnson, Judge Friendly set forth the following often-cited framework for analyzing whether an official's use of force violates due process or merely constitutes a tort:
 
 
 20
 In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.
 
 
 21
 481 F.2d at 1033. In light of the above factors, we readily conclude that the 'constitutional line has been crossed.' The prison officials' conduct involved acts which 'may not take [place] no matter what procedural protections accompany them.' Hudson v. Palmer, 468 U.S. 517, 541 n. 4, 104 S.Ct. 3194, 3208 n. 4, 82 L.Ed.2d 393 (1984) (separate opinion of Stevens, J.). As such, the officials' conduct violated [the plaintiff's] substantive due process rights and was actionable under Sec. 1983."
 
 
 22
 795 F.2d at 1258-59 (citations and footnote omitted).
 
 
 23
 The court declined to decide whether the same conduct would also violate the Eighth Amendment. Id. at 1259 n. 3. The court noted that "several courts have determined that an unauthorized attack by prison guards is not violative of the Eighth Amendment." Id.
 
 
 24
 In the present case, it is unnecessary for us to decide whether the plaintiff has stated a claim for cruel and unusual punishment. The plaintiff has alleged that he was forcefully pushed into his cell, resulting in injury to his person, for no justifiable reason. We think it is possible that under Johnson v. Glick the plaintiff may be able to prove, at trial, that defendants Wright and Seltin violated the plaintiff's due process rights. If the complaint is accurate, the use of force does not appear to have represented a good faith effort to maintain discipline. Although the plaintiff does not allege that permanent injury has resulted, he does allege that the application of force was unnecessary and excessive and that he suffered a great deal of pain. Whether the de mimimis principle would prevent the incident from rising to the dignity of a constitutional violation is a question best left to be decided after an evidentiary hearing. Reading the complaint in the light most favorable to the plaintiff, as we must, we think there was a dispute as to material facts, and that summary judgment was therefore inappropriate.
 
 II. Denial of Medical Attention
 
 25
 The plaintiff further alleged that the defendants ignored his request for medical attention when he was suffering from considerable pain. In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court held that a cause of action may exist under 42 U.S.C. Sec. 1983 where there has been "deliberate indifference to [a prisoner's] serious medical needs." The Court explained:
 
 
 26
 "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical 'torture or a lingering death,' ... the evils of most immediate concern to the drafters of the [Eighth] Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose.... The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation codifying the common-law view that 'It is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself.'
 
 
 27
 We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' ... proscribed by the Eighth Amendment."
 
 
 28
 Id. at 103-104 (citations and footnotes omitted).
 
 
 29
 In this case, the plaintiff alleged that the defendant prison officials deliberately ignored his requests for medical attention when he was in considerable pain. Estelle does not require that the prisoner suffer permanent injury, and it is fair to infer from the plaintiff's papers that no one could be sure he did not, in fact, need medical attention. The defendants deny having heard the plaintiff request medical attention, and if their testimony is found credible at trial, that will be the end of the matter; again, however, the resolution of such factual questions is not a matter of summary judgment. The conflicting assertions of the parties create a genuine issue as to a material fact.
 
 
 30
 III. Denial of Due Process Regarding Disciplinary Charges
 
 
 31
 The plaintiff was disciplined for "disobeying a direct order" and "threatening behavior," conduct categorized, in haec verba, as "major misconduct" by the Michigan Department of Corrections Policy Directive of September 28, 1981. The defendants do not dispute the fact that this policy directive was not properly promulgated in accordance with the Michigan Administrative Procedure Act. The district court held that Michigan Department of Corrections Rule 791.5501, which was properly promulgated, was the authority for the disciplinary action, and that the policy directive was merely for instructional purposes. The directive did not purport to be only "instructional," however, and the prison officials seem clearly to have followed it in disciplining the plaintiff.
 
 
 32
 Rule 791.5501 provides that "[a] resident alleged to have committed the following behavior shall be charged with major misconduct: ... (c) Serious insubordination as defined in resident guide book. (d) Assault or threat of violence." That rule, although similar to the policy directive, was not cited in the records of the disciplinary proceedings, nor was its exact language used. It was the language of the policy directive that was used, and the plaintiff clearly was disciplined pursuant to the policy directive.
 
 
 33
 Since entry of the district court's judgment in this case, the Supreme Court of Michigan has held that the Department of Corrections was required to comply with the provisions of the Michigan Administrative Procedure Act in adopting disciplinary directives, and that it failed to do so in the case of this particular directive. Martin v. Department of Corrections, 424 Mich. 553, 384 N.W.2d 392, 397 (1986). As this court has recognized, "A rule that does not comply with the procedural requirements of the APA is invalid under Michigan law." Spruytte v. Walters, 753 F.2d 498, 503 (6th Cir.1985), cert. denied, 106 S.Ct. 788 (1986).
 
 
 34
 Because the prison administration did not have this Michigan Supreme Court determination before it when disciplining the plaintiff, we believe that the prison administration ought to be given an opportunity, upon request of the plaintiff, to consider restoration of the plaintiff's good time credits before the federal courts address the due process claim arising out of the disciplinary proceeding.
 
 
 35
 Whether the plaintiff alleged sufficient involvement by the warden to state a claim against him, an issue not heretofore decided, can be determined by the district court on remand.
 
 
 36
 This cause is REMANDED to the district court for further proceedings in accordance with this opinion.